**Linda K. REED, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**No. 91–CV–75198–DT.**

United States District Court, E.D. Michigan, S.D.

Oct. 7, 1992.

Gerald Benjamin, Levine, Benjamin, Tushman, Bratt, Jerris & Stein, Southfield, Mich., for plaintiff.

Frances L. Zebot, U.S. Atty., Detroit, Mich., for defendant.

## ORDER ACCEPTING REPORT AND RECOMMENDATION

GADOLA, District Judge.

The Court has reviewed the file and the Magistrate Judge's Report and Recommendation submitted herein and any timely objections filed thereto. The proposed Report and Recommendation is hereby accepted and entered as the findings and conclusions of the Court;

Now, therefore, IT IS ORDERED that Defendant's Motion for Summary Judgment is hereby DENIED, the Motion for Summary Judgment of Plaintiff is hereby GRANTED and the case remanded to the Secretary for computation of benefits.

LET JUDGMENT BE ENTERED ACCORDINGLY.

## REPORT AND RECOMMENDATION

PEPE, United States Magistrate Judge.

Plaintiff Linda Reed has brought this action under 42 U.S.C. § 405(g) to challenge a final decision of defendant Secretary denying her application for Social Security disability insurance benefits. Both parties have filed summary judgment motions, which have been referred to me for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff applied for disability benefits on May 3, 1989, claiming disability as of January 6, 1986, due to arthritis, Chronic Fatigue Syndrome, temporomandibular joint disorder (TMJ), and depression (R. 112). Plaintiff had earlier filed for disability benefits on October 28, 1986, due to reactive arthritis and overall viral infections (R. 63). This application was denied in an opinion of November 4, 1987, by Administrative Law Judge ("ALJ") Alfred H. Varga (R. 106–11). Prior to filing her second application, plaintiff had requested Judge Varga to reopen her earlier case, which request was denied on the grounds of failure to establish the good cause requirement for reopening a prior decision (R. 21).

Plaintiff's counsel argues that the good cause condition was fulfilled because in 1987 neither the Secretary nor the medical community were adequately considering the symptoms chronic Epstein–Barr Virus Syndrome (also known as Chronic Fatigue Syndrome). Plaintiff's counsel notes that it was not until March 1988 that a definitive article on this impairment was published in the Annals of Internal Medicine (March 1988, pp. 387–89). Further, it was not until 1988 that the Center for Disease Control in Atlanta finally accepted Chronic Fatigue Syndrome as a disease.

The government argues that this condition was fully considered in the current decision. It also asserts that this Court has no jurisdiction to review a denial of the Secretary to reopen a prior determination.

Although plaintiff argues that the evolving understanding of this condition might be new and material evidence relevant to the 1987 decision and should establish good cause for the Secretary to have reopened that prior determination, both the Supreme Court and the Sixth Circuit have made it clear that this Court has no power to review a decision of the Secretary refusing to reopen a prior application, no matter how erroneous that decision is, unless there is a constitutional claim being asserted by the applicant. *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977),

*Blacha v. Secretary,* 927 F.2d 228, 231–32 (6th Cir.1990).

## BACKGROUND

Plaintiff was born March 9, 1949, and was 41 years of age on July 25, 1990, when the administrative law judge denied disability benefits. Plaintiff worked for Ford Motor Company as a material handler, checker, and assembler. This work was classified by the vocational expert as being, respectively, unskilled medium work, semiskilled light to medium work, and unskilled light work. Plaintiff last worked on January 6, 1986. Plaintiff has a high school education (R. 38).

*Administrative Law Judge's Decision*

Judge Varga found that plaintiff had a "severe probable small herniated disc at L5–S1 with mild facet arthropathy, status post reactive arthritis, and mild dysthymia" (R. 26). He found that these did not meet the Listing of Impairments. The ALJ found further that "claimant's testimony is generally credible; however, the objective medical evidence does not support the alleged severity of her symptomatology" (R. 26). Judge Varga found that plaintiff was unable to perform her past relevant work as a material handler, checker, or assembler. He found that plaintiff had a residual functional capacity for a limited range of sedentary work, with restrictions in walking and standing, allowing a sit/stand option, and limitations on writing, pushing, pulling, using ladders, and working around unprotected heights or moving machinery (R. 26). He found further that plaintiff's capacity for a full range of sedentary work was reduced by her pain and mild depression. Using Medical–Vocational Guideline 201.28 as a framework for decision, in conjunction with vocational expert testimony, the ALJ found that plaintiff could perform a significant number of jobs, including entry level bench work, subassembly, packaging, sorting, and visual inspection (R. 27).

The vocational expert testified that if plaintiff's testimony were credited, either of two conditions would preclude her ability to work. The first condition is the combination of her joint and leg pain, sleep disturbance, and headaches (R. 57). Secondly, the VE stated that "[t]he allegations associated with fatigue would be preclusive of competitive employment by itself, regardless of the cause" (R. 57).

In the present application, plaintiff's major argument is that the ALJ gave her Chronic Fatigue Syndrome inappropriate consideration. The ALJ did not find that to be a severe impairment. The ALJ finding was not the opinion of plaintiff's treating physician, Dr. Jean Marie Pierre, M.D., who found that plaintiff not only suffered from chronic Epstein–Barr Virus Syndrome, but also concluded that "[t]here is no way she could have fun[c]tioned in a competitive employment environment" (R. 268).

The hypothetical question asked of the vocational expert, upon which the Secretary bases his decision, does not consider fatigue or any of the other symptoms associated with Chronic Fatigue Syndrome. Because the Secretary found that plaintiff could not perform her past relevant work, the burden has shifted to the Secretary to demonstrate there are other jobs in the national economy that plaintiff can perform. *Allen v. Califano,* 613 F.2d 139 (6th Cir.1980). In this case, the issue is whether there is substantial evidence in the record for the ALJ to discount the opinion of plaintiff's treating physician and, further, to discount the credibility of plaintiff's testimony.

There is little dispute as to what constitutes the medical evidence in the present case. I asked plaintiff's counsel to state with specificity those areas of the ALJ's opinion that were incomplete, inaccurate, or mischaracterized the evidence. A copy of the ALJ's findings of fact, as supplemented by the comments of plaintiff's counsel, is included in plaintiff's motion for summary judgment. The ALJ's Report with counsel's annotations, as well as the statement of facts in support of the Secretary's motion for summary judgment, provide an adequate summary of the facts and plaintiff's medical history for purposes of this review.

ANALYSIS

*Standard of Review*

■ This Court must review whether the Secretary's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Sherrill v. Secretary of HHS*, 757 F.2d 803, 804 (6th Cir.1985). Substantial evidence has been defined as "[m]ore than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Furthermore, the Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). The substantial evidence standard presupposes that there is a "zone of choice" within which the Secretary may proceed without interference from the courts. *Id.* If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm. *Kirk v. Secretary of HHS*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983); *Studaway v. Secretary of HHS*, 815 F.2d 1074, 1076 (6th Cir.1987).

*Medical Evidence*

■ In evaluating the residual functional capacity of a plaintiff for purposes of a hypothetical question or otherwise, the Secretary should take a common sense approach, viewing the claimant as a whole. *Paris v. Schweiker*, 674 F.2d 707, 710 (8th Cir.1982). According to the court in *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir.1982):

[Residual functional capacity anticipates] the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful condi-

tions in which real people work in the real world.

As noted in *King v. Heckler*, 742 F.2d 968, 975 n. 2 (6th Cir.1984), where the "medical evidence is entirely consistent, as here, the importance of credibility findings is substantially decreased." Conversely, this would suggest that where the medical evidence, although not disputed, is divergent as to the cause of plaintiff's conditions, and focused on different aspects of plaintiff's symptoms, the importance of the credibility findings regarding the plaintiff would be substantially increased. The importance of the credibility findings regarding the plaintiff would also be enhanced because the methods for diagnosing Chronic Fatigue Syndrome are limited.

As noted in the Secretary's POMs 24575.-005: "there are no generally accepted criteria for the diagnosis of cases of CEBV" (Chronic Epstein–Barr Virus Syndrome or Chronic Fatigue Syndrome). It notes antibody tests for CEBV when positive confirm a prior infection that could result in CEBV, but the chronic nature of this herpes-like virus cannot be determined by objective medical evidence, but must be evaluated

on the basis of the totality of the evidence (including clinical course from onset of illness, symptoms, signs and laboratory findings). Consideration should be given to onset, duration, severity and residual functional capacity following the sequential evaluation process.

In the present case, therefore, the credibility of plaintiff's testimony regarding her symptoms is central to an evaluation of the medical evidence and the propriety of the hypothetical to the VE.

■ Thus the critical question is whether there is sufficient evidence in the record: (i) to reject the opinion of plaintiff's treating physician, and (ii) to reject plaintiff's credibility. While it is for the Secretary, not a reviewing court, to make credibility findings,[1] if an ALJ rejects a claimant's testimony as incredible, he must

---

1. *See, e.g., Hardaway v. Secretary of HHS*, 823 F.2d 922, 928 (6th Cir.1987); *Williamson v. Secretary of HHS*, 796 F.2d 146, 150 (6th Cir.1986);

*Kirk v. Secretary of HHS*, 667 F.2d 524, 538 (6th Cir.1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983).

clearly state his reasons for doing so.[2] The explanation or basis for rejecting medical opinions of a treating physician is also required.[3] It is well established that the findings and opinions of treating physicians are entitled to substantial weight. If adequately supported by objective findings, and if uncontradicted by other substantial medical evidence of record, a treating physician's opinion of disability is binding on the Secretary.[4]

■ In the present case, the ALJ, in effect, is interpreting the medical evidence to reach a *medical* opinion. An ALJ is not a physician. Many courts note that the ALJ is not qualified to evaluate medical data or to express medical opinions. *See, e.g., McBrayer v. Secretary of HHS,* 712 F.2d 795, 799 (2nd Cir.1983); *Gober v. Matthews,* 574 F.2d 772, 777 (3rd Cir.1978); *West v. Bowen,* 656 F.Supp. 664, 666 (S.D.N.Y.1987). Courts should be particularly skeptical of ALJs using their own medical opinions to bridge or fill gaps in the record on the functional limitations that are to be interpreted from the medical evidence.

■ In the present case, plaintiff's treating physician, Dr. Pierre, notes that plaintiff's January 1988 blood samples drawn for Epstein–Barr Virus was found to be strongly positive (R. 268). The record also shows that when plaintiff was seen at The University of Michigan Hospital Department of Internal Medicine Division of Infectious Disease in October 1985, the only infectious evidence was evidence of a past infection with CMV and Epstein–Barr Virus, but no evidence of acute infection with either of these agents (R. 156). "Based upon that study, Dr. E. Schaberg stated his belief that: We do not feel that the patient has an infectious disease process at the present time ..." Plaintiff was seen due to a persistent temperature associated with malaise and muscle and joint pains, which had improved at the time of her examination. Dr. Schaberg noted that on October 10, 1985, plaintiff had "very minimal symptomatology" (R. 156). He stated that plaintiff's "major complaint concerns tenderness in the left temporomandibular joint region ... and headaches on the left side of her head" (R. 156).

Dr. Pierre stated in her letter of May 17, 1990, that:

It has only been in the last couple of years that the medical community has begun to seriously address this [chronic Epstein–Barr Virus Syndrome, also known as Chronic Fatigue Syndrome]. I have enclosed, along with this letter, a copy of a checklist for Chronic Fatigue Syndrome patients.

(R. 268). Dr. Pierre also noted that plaintiff's symptoms of sleep disturbance, soreness, low back pain, weakness, and a constant low grade fever worsened in 1985 and following "to the point where she became quite lethargic and felt very weak" (R. 268). She noted that plaintiff's condition worsened again in 1986 for a period of time, during which time plaintiff experi-

---

2. *See, e.g., Auer v. Secretary of HHS,* 830 F.2d 594, 595 (6th Cir.1987) (noting approvingly that "[t]he administrative law judge cited very specific examples of [plaintiff's] lack of credibility on certain issues"); *Brown v. Bowen,* 794 F.2d 703, 708 (D.C.Cir.1986); *Brock v. Secretary of HHS,* 791 F.2d 112, 114 (8th Cir.1986) ("[B]efore an ALJ may reject a claimant's subjective complaints of pain, the ALJ must make express credibility determinations and set forth the inconsistencies in the record that lead the ALJ to reject the claimant's complaints of pain."); *Harris v. Heckler,* 756 F.2d 431 (6th Cir.1985) (rejecting the ALJ's "unexplained credibility finding" because the evidence of record "clearly corroborate[d]" plaintiff's assertions of pain); *Wier v. Heckler,* 734 F.2d 955, 961 (3d Cir.1984); *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir. 1983); *Broadbent v. Harris,* 698 F.2d 407, 412 (10th Cir.1983); *Tucker v. Schweiker,* 689 F.2d 777, 780–81 (8th Cir.1982).

3. *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir.1986); *Jones v. Heckler,* 760 F.2d 993, 997 (9th Cir.1985); *Garfield v. Schweiker,* 732 F.2d 605, 610 (7th Cir.1984).

4. *See Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir.1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."); *King v. Heckler,* 742 F.2d 968, 973 (6th Cir.1984) (same); *Lashley v. Secretary of HHS,* 708 F.2d 1048, 1054 (6th Cir.1983) (same); *Bowie v. Harris,* 679 F.2d 654, 656 (6th Cir.1982); *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir.1980).

enced extreme severe joint pain for which she was treated by rheumatologist Dr. Joseph Weiss. This joint condition was resolved to an extent after nine months, although plaintiff continued to experience moderate pain and tenderness in her joints. Dr. Pierre noted that plaintiff's condition of "prolonged experience of extreme fatigue, weakness, multiple joint pain, mild fever, sore throat, depression, headache, sleep disturbances, etc. continues," and that only in light of the new literature on Chronic Fatigue Syndrome did she interpret these symptoms to diagnose plaintiff as having Chronic Fatigue Syndrome. Dr. Pierre notes that since the middle of 1986

Linda Reed has struggled to maintain even minimal routine daily activities. There is no way she could have functioned in a competitive employment environment. Despite the fact that there is no effective treatment for this condition to date, Linda refuses to give up. She continues to participate in as much activity as she can tolerate, and I am sure she would return to work tomorrow if her condition permitted. At this point in time she remains disabled to work, and her case is still being followed.

(R. 268–69).

Linda Reed's symptom check list for Chronic Fatigue Syndrome that accompanies Dr. Pierre's letter shows severe persistent fatigue; various problems with cognitive functioning, including attention deficits; psychological problems, including depression and anxiety; problems relating to sleep disturbances, headaches, and numbness in her extremities; severe muscular weakness; comprehension and occasional orientation difficulties; painful lymph nodes, flu-like symptoms, including a chronic sore throat; muscle pain unrelated to activity; joint pain unrelated to arthritic condition, temporal mandibular syndrome (jaw pain), and multiple other symptoms. These symptoms found by Dr. Pierre include those set out in the Secretary's POMS which note the "most prevalent symptoms [of CEBV] are episodes of low grade fever, myalgias [muscle pains], headache and fatigue which fluctuate in frequency and severity." Dr. Pierre also filled out a Physical Capacity Evaluation form in which she noted that half of the time plaintiff could not perform many activities due to severe pain and extreme fatigue. She noted that even on a good day plaintiff would have substantial limitations in the range of no more than one hour to sit, stand, and walk at any one time (R. 213).

As noted in the Harvard Medical School Health Letter on Chronic Fatigue Syndrome (July 1988):

Mostly young adults, women twice as often as men, [ ] are beset by fatigue that lasts for months and is severe enough to interfere with the concentration needed for work and the enthusiasm need to have fun. Affected people also commonly have symptoms suggestive of a viral infection.

(R. 258). Many of these individuals are found to have "high levels of antibody to the Epstein–Barr Virus (EBV), the agent responsible for infectious mononucleosis" (R. 258). The Harvard health letter notes that notwithstanding initial inferences, it is now determined that EBV is not the exclusive or even principal cause of Chronic Fatigue Syndrome. Following a study of 500 patients, it was concluded that neither EBV nor any other common virus is the sole cause of this disease (R. 259). Rather one must diagnose this through looking at specific combinations of symptoms and physical signs. These are described as follows:

First, there must be persistent or relapsing fatigue or fatigability that limits daily activity to less than half its previous level and last for at least 6 months in someone who was previously well. Second, thorough evaluation must eliminate a long list of other potential causes. In addition, 6 of the following 11 features must be noted: mild fever; sore throat; painful lymph nodes in the neck or armpits; generalized weakness of the muscles; muscle pain or discomfort; disabling fatigue lasting more than 24 hours after exercise that would previously have been tolerated; headaches; joint pains that come and go; visual or other complaints suggesting involvement of the

nervous system; sleep disturbance; onset of the condition over a matter of hours to days (*Annuals of Internal Medicine*, March 1988, pp. 387–389).

■ In the present case, the Secretary discounted the opinion of Dr. Pierre based upon the evidence presented by Dr. Weiss and Dr. Schaberg at The University of Michigan Hospital, because the latter were asserted to be specialists. While it is true that specialists can be given additional weight over a treat physicians, *Reynolds v. Bowen*, 844 F.2d 451, 454–55 (7th Cir.1988), this is only if the specialists can provide new information or perspectives that are not provided by the treating physicians. This rule is also applicable only if the specialties are relevant to the consideration. In the present case, Dr. Weiss is a specialist in rheumatology. He saw plaintiff for a period of time when she had an increase in her symptoms related to her arthritis, which included a period of increased sedimentation rate (R. 178–79). During this period of aggravation of her symptoms, which he believed began in 1987, Dr. Weiss even stated an opinion that plaintiff was "totally and permanently disabled" (R. 254, May 8, 1988). It does not appear that he has the specialized training necessary to give an enhanced opinion regarding viral diseases. He did not render an opinion on any such condition, although he did confirm that plaintiff continued to suffer fatigue and inability to sustain activity because of dizziness and weakness, both of which are CFS symptoms.

The ALJ put much weight on the fact that in Dr. Weiss' July 27, 1989, letter he noted that plaintiff had been off medicine for her arthritis, that she had no change in her physical condition, and that her condition was "stable" (R. 179). Yet, it goes beyond the realm of reason to interpret this as meaning that Dr. Weiss was referring to Chronic Fatigue Syndrome, an impairment outside of his field of expertise and about which he rendered no opinion or diagnosis. In Dr. Weiss' July 27, 1989, letter he again noted that plaintiff continued to feel fatigued (R. 179). Also, the mere fact that a condition is stable does not mean that it cannot be disabling. *See*

*Gude v. Sullivan*, 956 F.2d 791 (8th Cir. 1992), which found that the symptoms from a stable condition of Systemic Lupus Erythematosus (SLE) could be disabling even when the condition was in remission and stabilized when plaintiff continued to have the symptoms of arthritis, pain in the joints, kidney and blood disorders, skin eruptions, and fever. What could be said about SLE could also be said about CFS, even if we were to interpret that it is this condition to which Dr. Weiss was referring.

The other experts to which the ALJ refers do have appropriate specialties because they are experts in internal medicine at The University of Michigan Hospital Division of Infectious Disease. Yet, the evidence shows that they saw plaintiff in 1985, prior to the time that her symptoms of CFS had increased, and also at a time when CFS was not widely recognized in the medical literature. They did confirm that plaintiff had objective evidence of a past infection with CMV and Epstein–Barr Virus (R. 156). Thus, their opinions, while in an appropriate field of specialization, did not have an adequate basis regarding the more severe symptoms plaintiff experienced after seeing them.

In the present case, then, specializations of other medical experts cannot be used as sufficient evidence to rebut the opinion of plaintiff's treating physician, even if that treating physician is only a general practitioner. Also, there is nothing in the medical record showing any inconsistencies or other reasons to disbelieve plaintiff's reports of her symptoms. Nor is there any indication that any treating physician questioned plaintiff's symptoms of fatigue or other items related to Chronic Fatigue Syndrome. Finally, there is no indication that plaintiff's symptoms are a side effect of any medication she is taking. This further reinforces a conclusion that these symptoms are caused by Chronic Fatigue Syndrome.

### Plaintiff's Credibility

In *Duncan v. Secretary of HHS*, 801 F.2d 847 (6th Cir.1986), the Sixth Circuit established the following analysis for eval-

uating a claimant's assertions of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.... The standard does not require, however, "objective evidence of the pain itself."

*Id.* at 853 (*citing Green v. Schweiker,* 749 F.2d 1066, 1071 (3d Cir.1984).[5] *Duncan* was specifically focusing on the symptom of pain, yet it is clear that § 423(d)(5) dealt with an evaluation not only of pain but also of other symptoms. While the 1984 amendment to § 423(d)(5) had a sunset provision on January 1, 1987, the standard has continued to be applied following that date because the 1984 amendments effectively codified the Secretary's then existing regulation on evaluation of pain set out in 20 C.F.R. § 404.1529.[6]

 In considering the plaintiff's credibility, Judge Varga twice notes that he finds plaintiff to be generally credible (R. 24, 26). Yet, he stated that "however, the objective medical evidence does not support the alleged severity of her symptomatology" (R. 24, 26). This incantation, without more, cannot serve as the magic elixir to remedy an administrative record that is otherwise deficient in evidence discounting plaintiff's credibility. The Ninth Circuit, in a recent *en banc* opinion, made it clear that while subjective complaints [in that case] of pain must be accompanied by medical evidence, the court has never required that the medical evidence fully corroborate the severity of the symptom. *Bunnell v. Sul-*

*livan,* 947 F.2d 341, 347 (9th Cir.1991) (en banc). As the Sixth Circuit reasoned in *Beavers v. Secretary of HHS,* 577 F.2d 383 (6th Cir.1978), if such a requirement were imposed, "there would be no occasion for subjective, personal testimony in a disability hearing." 577 F.2d at 386. In *Bunnell,* the Ninth Circuit noted that

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints.

947 F.2d at 345 quoting from *Luna v. Bowen,* 834 F.2d 161, 165 (10th Cir.1987). The court continued, stating:

> [A]n adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of [the symptom, pain in that case].... Further, although an adjudicator may find the claimant's allegations of severity to be not credible, the adjudicator must specifically make findings which support this conclusion.
>
> These findings, properly supported by the record, must be sufficient specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds.... [A] reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain.

*Id.* at 345–46 (citations omitted).

Both Dr. Schaberg and Dr. Pierre noted that plaintiff had blood tests that were positive for the Epstein–Barr Virus (R. 156, 268). The only other grounds that the ALJ mentions with respect to the discounting of plaintiff's credibility is the statement that, "I have considered the claimant's allega-

---

5. Although the court in *Duncan* was in part interpreting the Social Security Reform Act of 1984, which amended 42 U.S.C. § 423(d)(5) and applied only to determinations made prior to 1987, the Sixth Circuit has since held that *Duncan* continues to apply to determinations made after 1987. *See McCormick v. Secretary of HHS,* 861 F.2d 998, 1003 (6th Cir.1988).

6. While Congress has not modified that provision since 1984, as was originally anticipated in the legislation, the Secretary adopted new regulations on evaluation of pain and its impact upon residual functional capacity effective November 17, 1991—56 Fed.Reg. # 202, p. 57940, *et. seq.,* Nov. 14, 1991. These regulations were not effective as of the time of plaintiff's administrative hearing.

tions of pain and other limiting symptoms according to the policy set forth in Social Security Ruling 88–13" (R. 25). Judge Varga then accurately summarizes the criterion of evaluation set out in SSR 88–13, but he makes no mention of any of his findings or thought processes in analyzing plaintiff's conditions and symptoms in light of that rule.

Thus, this is again a conclusory assertion by the ALJ without any specific or factual analysis. It takes a judicial leap of faith to accept such unexplained ALJ conclusion. If general references to "inadequate objective medical evidence" and to SSR 88–13 are sufficient evidence, without more, to uphold a rejection of a claimant's symptomatology and/or the opinion of a treating physician, then judicial review would have no meaning, since courts would rubber stamp an approval on the Secretary's invocation of the proper mantra. We cannot, in the absence of any clear evidence in the record that jumps out at us, assume that Judge Varga in the privacy of his mind made a detailed and accurate evaluation in light of SSR 88–13 as it related to plaintiff's fatigue syndrome, its duration, frequency, functional limitations, and limitations on plaintiff's activities of daily living.

In the present record, it is also clear that there is adequate evidence, including plaintiff's blood tests, to meet the first prong of the *Duncan* test. The defendant acknowledges that plaintiff has met the first prong of the *Duncan* test with respect to the back impairment and history of arthritis. But, the *Duncan* analysis in the Secretary's brief is not applied at all to plaintiff's other—and according to the vocational expert, independently disabling—impairment of Chronic Fatigue Syndrome. The medical evidence of record is consistent with the other evidence, including even the psychiatric evidence of Dr. LaDaiere, Ph.D. Dr. LaDaiere noted that plaintiff had a moderate to marked restriction in her ability to complete a normal work day and work week without interruptions from psychologically based symptoms. Dr. LaDaiere also concluded that plaintiff was restricted in her ability to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 204–205).

In addition to the consistency of the medical evidence, lack of inconsistencies in plaintiff's testimony regarding her limitations, lack of medical opinions directly contradicting plaintiff's assertions regarding her symptoms related to Chronic Fatigue Syndrome, and her repeated efforts to seek help, another factor that can be considered with regard to plaintiff's credibility is her long and continuous past work record with no evidence of malingering and indications of her desire to work. *Allen v. Califano*, 613 F.2d 139, 147; *Beavers v. Secretary of HHS*, 577 F.2d 383, 387 (6th Cir.1978). The evidence shows that during the last two years plaintiff worked, she earned in excess of $37,000 per year at Ford Motor Company (R. 73), and, as her treating physician noted, "I am sure she would return to work tomorrow if her condition permitted" (R. 269).

It appears from the record that plaintiff is not presently receiving income following the expiration of her twelve months of sickness and accident benefits, which expired in June 1987 (R. 114).

For the reasons stated above, and based upon the totality of the evidence, there is not substantial evidence from which the Secretary could reject either the credibility findings with regard to plaintiff's symptoms nor the statements set out in Dr. Pierre's report. The evidence also shows that with respect to plaintiff's Chronic Fatigue Syndrome, her constellation of symptoms satisfies the first prong of the *Duncan* test, and given the unrebutted testimony of the plaintiff and her treating physician, no reasonable fact-finder could conclude that she did not satisfy the second prong of that test. Under the reasoning articulated by the Ninth Circuit in the *en banc Bunnell* case, which reasoning is consistent with the case law in the Sixth Circuit, I find that this is insufficient evidence to reject the plaintiff's testimony regarding her fatigue and other symptoms. In the absence of rejecting those symptoms, the

opinion of plaintiff's treating physician cannot be discounted or rejected.[7]

*Burdens of Proof and VE Testimony*

■■■■ Once the Secretary finds that a plaintiff cannot perform his past work, the burden shifts to the Secretary to prove the existence of other work, which exists in significant numbers, that the plaintiff can perform. *See Price v. Heckler,* 767 F.2d 281, 284 (6th Cir.1985); *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir.1980). If the Secretary seeks to rely on VE testimony to carry his burden of proving the existence of a substantial number of jobs that plaintiff can perform, other than his past work, the testimony must be given in response to a hypothetical question that accurately describes plaintiff in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the question must accurately describe the claimant.[8] A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the plaintiff can perform.

In this case, the ALJ found that plaintiff could not return to her past relevant work. Rather, he found that plaintiff could perform no more than a limited range of sedentary work. Thus, the burden of proof has shifted to the Secretary to demonstrate that there are other jobs in the national economy which plaintiff can perform and, because plaintiff has nonexertional limitations, the Medical–Vocational Guidelines cannot be used to direct this finding.

■■■■ A hypothetical question to a VE may omit nonsevere impairment but must include those which the ALJ finds to be severe. *Benenate v. Schweiker,* 719 F.2d 291 (8th Cir.1983), *Pendley v. Heckler,* 767 F.2d 1561 (11th Cir.1985). The hypothetical used in this case failed to satisfy this standard because it did not include symptoms of plaintiff's Chronic Fatigue Syndrome. The VE did testify, however, that if plaintiff's testimony were credited or if the symptoms indicated in Dr. Pierre's evaluation were credited, that plaintiff could perform no work. Therefore, it cannot be said on the present record that there is substantial evidence to uphold the Secretary's finding that plaintiff can perform a substantial number of jobs in the economy. The Secretary has not moved for a remand to obtain the opinion of a medical advisor or other current medical evaluation of plaintiff's Chronic Fatigue Syndrome. Indeed, had the Secretary made such a motion, this Court would require a showing under 42 U.S.C. § 405(g) as to why the Secretary failed to include this in the earlier proceeding.[9]

7. Plaintiff's counsel refers to an unreported opinion of *McFarland v. Sullivan,* United States District Court for the Eastern District of Pennsylvania, Dec. 2, 1991, Case No. 91–3078, CCH ¶ 16571A, 1991 WL 259277 (E.D.Pa.). In that case, plaintiff's treating physician diagnosed that plaintiff had Chronic Fatigue Syndrome. A medical advisor testified that plaintiff did not have Chronic Fatigue Syndrome and asserted that her medications, Dilantin and Tegretol, could cause tiredness, fatigue, and mental changes, as well as having a strong sedative effect that could be connected to plaintiff's extended sleep requirements. The ALJ also noted that another medical doctor, Dr. Drudy, stated his opinion that plaintiff tended to exaggerate her symptoms. In the present case, there is no counter expert testimony, no medications that could cause the effects, and no medical evidence questioning the credibility of the plaintiff as existed in the *McFarland* case.

8. *See, e.g., Cole v. Secretary of HHS,* 820 F.2d 768, 775–76 (6th Cir.1987) (Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may constitute substantial evidence only if the questions posed accurately portray the claimant's impairments."); *Varley v. Secretary of HHS,* 820 F.2d 777, 779 (6th Cir. 1987) (hypothetical question must accurately portray claimant's "individual physical and mental impairments"); *Bradshaw v. Heckler,* 810 F.2d 786, 790 (8th Cir.1987) ("The question must state with precision the physical and mental impairments of the claimant."); *Myers v. Weinberger,* 514 F.2d 293, 294 (6th Cir.1975); *Noe v. Weinberger,* 512 F.2d 588, 596 (6th Cir. 1975).

9. A case can be remanded pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of additional evidence only upon a showing that the evidence is new and material, and that good cause exists for having failed to include the evidence in the prior administrative record. The Sixth Circuit has been strict in applying these requirements. *See, e.g., Oliver v. Secretary,* 804 F.2d 964 (6th Cir.1986); *Willis v. Secretary,* 727 F.2d 551 (6th Cir.1984). Congress sought to limit remands by either side. Re-

RECOMMENDATION

For the reasons stated above, it is recommended that defendant's motion for summary judgment be denied, and that plaintiff's motion for summary judgment be granted and the case be remanded for an award of benefits for the period following the Secretary's November 4, 1987, decision which was not reopened.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D.Mich.L.R. 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D.Mich.L.R. 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) Pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: September 11, 1992.

---

mands were not permitted merely to supplement the record and to correct errors that could have been avoided in the first instance. The Supreme Court noted that Congress, in imposing the requirement that the party seeking new evidence show why it was not gathered and presented before, sought "to speed up the judicial process so that these cases would not just go on and on and on." [*Melkonyan v. Sullivan,* — U.S. ——, at ——,] 111 S.Ct. [2157] at 2164 [,115 L.Ed.2d 78 (1991)] (quoting Congressman Pickle, 125 Cong.Rec. 23383 (1979)). By encouraging the parties to prepare their cases adequately at the administrative level in the first place will reduce erroneous decision and time consuming appeals and remands. Plaintiffs who make such errors can reapply for benefits starting from the date of the new application. The Secretary, when making such errors, can seek to terminate future benefits under 42 U.S.C. § 423(f). Thus, in cases such as this, this Court should decline to exercise its discretion to remand for obtaining additional evidence unless the Secretary can demonstrate some good cause for why such evidence was not presented before. *See Carroll v. Secretary of HHS,* 705 F.2d 638, 644 (2d Cir.1983). A remand to allow the Secretary to try again to develop substantial evidence to rebut plaintiff's prima facie case is different from a remand to accord the plaintiff a full and fair hearing, or to make explicit findings essential to federal court review, or to make findings under a correct interpretation of the law or regulations to which the Supreme Court referred as examples of appropriate sentence four remands. — U.S. at —— ——, 111 S.Ct. at 2164–65 (quoting from House Report No. 96–100, at 13).