DECISION
Before this Court is an appeal from a February 3, 2000, decision by the Rhode Island Department of Human Services (DHS) denying John David's (plaintiff) application for Medical Assistance (MA) benefits. The plaintiff seeks either a reversal of the DHS decision denying his benefits, or, in the alternative, remand of the case. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 Facts/Travel
On October 1, 1999, the plaintiff, a fifty-year-old-male with a more than twenty year work history, applied for MA benefits due to Chronic Fatigue Syndrome (CFS).[1] As part of his application, plaintiff submitted an AP-70 form; Information for Determination of Disability. In this form, the plaintiff stated that he had CFS. The plaintiff included a list of twenty-six symptoms including, but not limited to, prolonged fatigue, swollen and painful lymph nodes, muscle weakness, forgetfulness, and balancing problems. See AP-70. The plaintiff acknowledged that he was able to cook, do dishes, vacuum, dust, make the beds, and do the laundry. Id. The plaintiff also stated that he did not need personal help getting places.
The plaintiff also submitted two MA-63 Physician's Examination Reports. One report was prepared by Dr. Moran, plaintiff's primary care physician, and another by Dr. Clough. The MA-63 completed by Dr. Moran on October 7, 1999, indicated that the plaintiff's functional limitations during an eight-hour period were sitting for eight hours, walking and standing for two hours, reaching for two hours, and carrying up to twenty-five pounds for two hours. See MA-63. Dr. Moran also placed moderate limitations on the plaintiff's ability to remember and carry out simple instructions and his ability to maintain attention and concentration in order to complete tasks in a timely manner. Although the plaintiff's overall prognosis was good, he was diagnosed with "? chronic fatigue/viral syndrome, labile hypertension, and generalized anxiety." (Amended 5B1-5B4.) Subsequently, Dr. Moran referred the plaintiff to Dr. Clough for an evaluation specifically for CFS.
On November 9, 1999, the plaintiff was examined by Dr. Clough. On the MA-63 completed by Dr. Clough, she noted that the plaintiff appeared fatigued and had a moveable one centimeter node behind his left jaw. She also indicated that the plaintiff's tandem gait was very poor and that he had a marked lymphadenopathy in his neck. The plaintiff's functional limitations during an eight-hour period included walking or standing for less than one hour and sitting for one hour, lifting ten to twenty pounds occasionally, and not being able to bend. All of the plaintiff's work-related mental abilities were described as either "markedly limited" or "moderately limited." (Amended 5E3.) Other ophthalmological and thyroid tests appeared normal.
Based upon Dr. Clough's examination, the plaintiff's prognosis was poor, and he was diagnosed with CFS and chronic bronchitis. Subsequently, further laboratory tests were conducted by Dr. Moran on December 16, 1999, indicating the plaintiff suffered from Epstein-Barr Virus (EBV). (Amended 8.) Further examinations were recommended but were not covered by plaintiff's medical coverage.
On October 18, 1999, the plaintiff received a denial notice from the Medical Assistance Review Team (MART). The MART determined that there was no "objective evidence" that the plaintiff was totally disabled and that he was capable of performing "light work." See AP-65. The plaintiff appealed and appeared pro se at the administrative hearing on December 8, 1999. However, the administrative hearing record remained open until January 10, 2000, to allow the plaintiff more time to forward the additional MA-63 form and laboratory results for consideration by the DHS appeals officer. On January 5, 2000, MART conducted a post-hearing review of the medical evidence submitted by the plaintiff. The MART found "all lab unremarkable" and that the plaintiff was capable of "light work." (Amended 8.)
On February 3, 2000, DHS issued a decision finding the plaintiff ineligible, concluding there was "no objective medical evidence in the record to support a finding of severe impairment," the laboratory work was "unremarkable," and the plaintiff was capable of performing "light work." (Amended 9 at 7.)
 Standard of Review
The Court's review of a decision of the Department of Human Services is controlled by G.L. 1956 § 42-35-15(g), which provides for review of a contested agency decision:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
1) In violation of constitutional or statutory provisions;
 2) In excess of the statutory authority of the agency;
 3) Made upon unlawful procedure;
 4) Affected by other error of law;
 5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307 (R.I. 1988). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the agency's decision. Newport Shipyard v. Rhode Island Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897 (quoting Caswell v. George Sherman Sand Gravel Co., 424 A.2d 646, 647 (RI 1981)). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody, 509 A.2d at 458. The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. Rhode Island Public Telecommunications Authority, et al. v. Rhode Island Labor Relations Board, et al., 650 A.2d 479, 485 (R.I. 1994).
 The Department of Human Services
The Rhode Island Department of Human Services is an agency within the Executive Branch of state government. G.L. 1956 § 42-12-1, et seq. Pursuant to its statutory mandate, DHS is responsible for the management, supervision and control of various social service programs. Specifically, DHS is responsible for the management of state and federally funded public financial assistance programs. G.L. 1956 § 42-12-4.
General Laws 1956 § 40-8-1(c) provides in pertinent part:
 "[It is] declared to be the policy of the state to provide medical assistance for those persons in this state who possess the characteristics of persons receiving public assistance under the provisions of § 40-5.1-9 or § 40-6-27, and who do not have the income and resources to provide it for themselves or who can do so only at great financial sacrifice. Provided further that medical assistance must . . . qualify for federal financial participation pursuant to the provisions of Title XIX of the federal Social Security Act, 42 U.S.C. § 1396 et seq., as such provisions apply to medically needy only applicants and recipients."
The DHS is responsible for administering the Medical Assistance Program within the standards of eligibility, as enumerated in G.L. 1956 §40-8-3. For all eligible individuals, DHS must pay benefits pursuant to regulations which it must develop and have approved by the federal government. To comport with federal requirements in order to receive federal funding, the DHS must develop regulations and have them approved by the federal government. See, G.L. 1956 § 40-8-5.
 Standards Used to Determine Disability
Initially, the plaintiff argues that DHS failed to determine disability within SSI standards, in violation of 42 U.S.C. § 1396(d) and underlying regulations by not following the five-step sequential evaluation process. The DHS responds that the MART was able to make their determination that the plaintiff's condition was not severe at the second step. Therefore, the MART did not need to proceed to the next steps.
The DHS supervises and manages public assistance programs which are funded in part, or in whole, by the federal government. G.L. 1956 §42-12-4. The MA program is a product of the federal Social Security Act and is administered and funded by the federal government.42 U.S.C. § 1396 et seq. The DHS is thus responsible for supervising and managing the MA program. In doing so, DHS is obligated to adopt certain definitions and guidelines established by the federal government. Id. The DHS must use the same definition of "disability" that is provided by the Social Security Act:
 "[F]or the purposes of eligibility, an individual is disabled if s/he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than twelve (12) months. . . ."
42 U.S.C. § 1382c (a)(3). The DHS must also use the same guidelines established by the U.S.
Secretary of Health and Human Services for determining whether an individual is disabled for purposes of the MA program. The guidelines entail the following five-step sequential evaluation:
 "1. Is the claimant engaged in a substantial activity?
 2. If not, is the impairment(s) severe?
 3. If severe, does it meet or equal an impairment listed in the Supplemental Security Income (SSI) regulations?
 4. If it does not meet or equal SSI regulations, does the impairment(s) prevent the claimant from doing past relevant work? 5. Considering age, education, work experience, and "residual functional capacity," does the impairment(s) prevent the claimant from doing other work in the national economy?"
See 20 C.F.R. § 416.920; see also Brown v. Yuckert, 482 U.S. 137, 141-43 (1987) (delineating the five steps).
The DHS is obligated to follow a "set order" of steps when evaluating a disability claim. See C.F.R. § 416.920. In doing so, the agency may conclude its inquiry before all the steps are applied.
Therefore, an agency can find that an applicant is disabled or not disabled at any point in the review, and does not need to review the claim further. Id. Specifically, "[a] negative answer to any question, other than step three, leads to a determination of not disabled." Pratt v. Rhode Island Dept. of Human Services, No. 96-6490, 1998 WL 64190 at 6 (R.I. 1998) (citing McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986)).
In the instant matter, the DHS initially determined that the plaintiff was unemployed and not engaged in a substantial activity. Next, the DHS determined that the plaintiff's condition was not severe relying heavily on the MART findings and Dr. Moran's report that stated within an eight hour period the plaintiff could sit for eight hours, walk and stand for two hours, reach for two hours, and carry up to twenty-five pounds for two hours. The inquiry ended at step two.
Although the inquiry can end at step two with a finding that the impairment is not severe, the severity of an individual's impairment must be determined by the "totality of medical signs, symptoms, and laboratory findings, and the effects of the impairment(s), including any related symptoms, on the individuals ability to function." Evaluating Cases Involving Chronic Fatigue Syndrome, 64 Fed. Reg. 83, 23382 (1999) (emphasis added). Here, the plaintiff's abnormal laboratory results were not considered by the DHS in arbitrarily reaching its conclusion to deny the plaintiff's application for disability at step two.
 Reliance Upon Medical Evidence
The plaintiff argues that DHS's finding that the laboratory work was "unremarkable" and finding that there was "no objective medical evidence" to support plaintiff's claim were clearly erroneous as matter of law. The DHS responds that assessment of the various medical evidence presented by the plaintiff to the hearing officer is beyond this court's review. Therefore, the decision should be allowed to stand.
Although Social Security Rulings do not have the force and effect of the law or regulations, they are binding on all components of the Social Security Administration (SSA) in accordance with section 402.35(b)(1) of the Social Security Administration Regulations (20 C.F.R. Part 402), and are to be relied upon as precedents in adjudicating other cases. See Social Security Rulings — Preface, (last visited Jan. 5, 2001)http://www.ssa.gov/OP_Home/rulings/rulings-pref.html. When specifically evaluating laboratory results and their relationship to CFS, the Social Security Administration ruled that:
 "the following laboratory findings establish the existence of a medically determinable impairment in individuals with CFS:
 An elevated antibody titer to Epstein — Barr virus (EBV) capsid antigen equal to or greater than 1:5120, or early antigen equal to or greater than 1:640."
Evaluating Cases Involving Chronic Fatigue Syndrome, 64 Fed.Reg. 83, 23382 (1999) (emphasis added). Furthermore, laboratory results are defined as a form of "objective medical evidence" by20 C.F.R. § 416.928 (b) and (c). Thus, according to the SSA, laboratory results indicating the existence of EBV in conjunction with a diagnosis of CFS establish a "medically determinable impairment" through the use of "objective medical evidence." In fact, several courts have noted the close similarity and possible relationship between EBV and CFS and have treated them as more or less the same. See e.g., Cohen v. Secretary of HHS, 964 F.2d 524, 529 (6th Cir. 1992); Thaete v. Shalala,826 F. Supp. 1250, 1251 (D.Colo. 1993); Reed v. Secretary of HHS,804 F. Supp. 914, 918 (E.D.Mich. 1992).
Furthermore, a conclusion that a plaintiff's complaints were wholly unsubstantiated by "objective medical findings" was found to be simply inaccurate when a plaintiff was diagnosed with CFS by his doctor and whose complaints were entirely consistent with the symptomology for CFS. Williams v. Shalala, WL 328487 (W.D.N.Y. 1995).
In the instant matter, Dr. Moran had the plaintiff tested for EBV, among other things, following his evaluation by Dr. Clough. After reviewing these laboratory results, both the MART and the appeals officer stated "all lab unremarkable" even though the laboratory report stated the results were abnormal and indicated EBV.[2] Subsequently, the DHS denied the plaintiff's application for disability.
In reaching its conclusion, the MART and the appeals officer did not consider the abnormal laboratory results indicating EBV in conjunction with the plaintiff's CFS diagnosis, which according to the Social Security Administration Ruling 99-2p establishes a "medically determinable impairment." Analogous to the facts in Williams which established "objective medical findings," the plaintiff was diagnosed with CFS by Dr. Moran and Dr. Clough and his symptoms were consistent with the symptomology for CFS.[3] Accordingly, failure to consider this as objective medical evidence is inconsistent with the Social Security Act and its underlying regulations.
 Remand of a Case
Remand allows for correction while still maintaining the proper allocation of responsibilities between the courts and the agencies. The Federal Circuit observed regarding one particular board:
 "The Board failed to make relevant factual findings or apply the appropriate statutory and regulatory law. . . . As a result we can neither reverse nor affirm the Board's decision because either action would require us to apply law the Board did not consider to facts the Board did not consider. . ."
2 Charles H Koch, Jr., Administrative Law and Practice § 8.31, 519-520 (2d ed. 1997) (quoting Whittington v. MSPB, 80 F.3d 471, 476 (Fed. Cir. 1996)). In the case at bar, the record reflects that the DHS did not consider the abnormal laboratory results along with the plaintiff's diagnosis of Chronic Fatigue Syndrome as a "medically determinable impairment" as defined by the Social Security Administration. See Williams v. Shalala, 1995 WL 328487, at 6 (W.D.N.Y. 1995) (holding that a remand was required where the ALJ's decision "reflects an analysis inconsistent with the appropriate framework for assessing disability claims premised on CFS.") Although this court realizes that after reviewing the laboratory results, along with all the other evidence, the DHS may still find the plaintiff's impairment was not severe, this review does not preclude the DHS from reevaluating whether or not the plaintiff is disabled according to the applicable SSA guidelines.
After reviewing the entire record, this court finds that the substantial rights of the plaintiff have been prejudiced because the DHS findings were arbitrary and in violation of the statutory provisions of the Social Security Act. Accordingly, the DHS decision is vacated, and this matter is remanded to the appeals officer for reevaluation of entitlement to benefits consistent with this opinion. This court shall retain jurisdiction of the matter.
Counsel shall submit the appropriate order for entry.
[1] The plaintiff indicated on the AP-70 form that he last worked as a car salesman, but prior to that he worked in manufacturing for over twenty years.
[2] All the plaintiff's clinical immunology results were outside the normal ranges and were listed on the report as either critical/abnormal or indicative of infection. Specifically, the EBV serology indicates infection.
[3] Many of the plaintiff's symptoms were within the parameters of the current CDC definition of CFS, including painful lymph nodes; short-term memory problems; visual disturbances; and prolonged fatigue.