**Catherine M. FRAGALE, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

No. 95–CV–201H.

United States District Court, W.D. New York.

Feb. 21, 1996.

250

Catherine M. Fragale, Amherst, New York, pro se.

Patrick H. Nemoyer, United States Attorney, Mary Pat Fleming, Assistant United States Attorney, of Counsel, Buffalo, New York, for Government.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

The parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment, in accordance with 28 U.S.C. § 636(c). Plaintiff initiated this action to seek review of the final decision of the Secretary of Health and Human Services (the "Secretary")[1] denying her application for disability and Supplemental Security Income ("SSI") insurance benefits. The Secretary has moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). For the following reasons, the Secretary's motion is denied.

### BACKGROUND

Plaintiff was born on November 30, 1964 (T. 89).[2] She obtained an associate's degree in business administration (T. 144). Plaintiff has worked as a cashier in a fast food operation and a supermarket, and worked as a cook in Pizza Hut (T. 322).

Plaintiff applied for disability insurance benefits and SSI on July 20, 1992, claiming

1. Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security effective March 31, 1995. In accordance with § 106(d) of that Act, Shirley S. Chater, the Commissioner of Social Security, has been substituted for Donna E. Shalala, the Secretary of Health and Human Services, as the defendant in this action. Because the determination appealed from in this case was rendered prior to this statutory transfer of function, and in the interest of continuity of precedent, the court will continue to refer to the defendant as "the Secretary."

2. References preceded by "T" are to page numbers of the transcript of the administrative record, filed by defendant as part of the answer to the complaint.

disability as of August 15, 1989 due to asthma, Chronic Fatigue Syndrome ("CFS"), and alcohol and substance abuse (T. 93). This application was denied on November 10, 1992 (T. 97–100, 134–37), and again on reconsideration (T. 103, 125–28). On August 18, 1993, a hearing was held before Administrative Law Judge ("ALJ") Karen H. Baker. Plaintiff testified at the hearing, and was represented by counsel. A vocational expert also testified (T. 82–87).

On September 13, 1993, ALJ Baker issued her decision finding that plaintiff was not disabled within the meaning of the Social Security Act (T. 19–26). According to the ALJ, the medical evidence established that plaintiff suffered from Fibromyalgia, asthma, allergies, depression, and substance abuse, but that these impairments considered alone or in combination did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (T. 25). The ALJ also found that plaintiff was not a credible witness. Furthermore, the ALJ found that plaintiff could not perform her past work, but that she retained her residual functional capacity to do light work, limited by an inability to be exposed to environmental irritants and stressful situations (*Id.*).

The decision of the ALJ became the final decision of the Secretary when, on January 13, 1995, the Appeals Council denied plaintiff's request for review (T. 7–8). On appeal, plaintiff submitted a letter from Dr. Richard Lanham, dated April 7, 1994. Dr. Lanham stated that he is plaintiff's treating physician and that she suffers from CFS, and has suffered for the past six and a half years (T. 351). The Appeals Council did not believe that the letter was material to the issue of whether plaintiff was disabled on or before the date of the ALJ hearing (T. 8). Plaintiff filed this action on March 13, 1995 (**Item 1**).

The medical evidence indicates plaintiff sought treatment in 1987 and 1988 for various conditions including mononucleosis (T. 300), back and neck pains (T. 301–302, 305), and headaches (T. 301).

In January, 1991, plaintiff sought help for her alcohol and drug dependency at Horizon Human Services (T. 203). At the hearing,

plaintiff testified that she had been sober since March 17, 1991 (T. 41).

Plaintiff was seen on October 23, 1991 by Mary Callaghan, a physician's assistant (T. 174). Plaintiff complained of chronic fatigue, intermittent back spasms and fever, headaches, and an inability to concentrate (*Id.*). Ms. Callaghan noted that plaintiff did not meet the criteria for CFS.

From November, 1991 to June, 1992, plaintiff was treated at Buffalo General Hospital for complaints of sore throat and sinus congestion (T. 177, 180), asthma and headaches (T. 194–95), chronic fatigue (T. 180–81, 189), and knee pain (T. 181, 186).

Plaintiff was seen by Dr. Ileana Madrigal on March 27, 1992 (T. 274–75). Plaintiff believed that she had candida, but Dr. Madrigal advised her otherwise (T. 274). The diagnosis was fibromyalgia, asthma, high cholesterol (T. 274). Elavil, an anti-depressant medication, was prescribed (*Id.*)

The April 16, 1992 medical records indicate that plaintiff was seen at Millard Fillmore Hospital due to allergies and tiredness cause by Sudafed (T. 277). Plaintiff also reported that she had mood swings and that Elavil was helping her feel better (*Id.*).

On August 13, 1992, plaintiff reported feeling "very fatigued" (T. 283). She also complained of muscle aches and asthma (*Id.*).

Progress notes of October, 1992, indicate that plaintiff's emotional state was "great", but that she felt fatigued especially after increased activity (T. 285). The diagnosis continued to be Fibromyalgia (T. 286).

On April 16, 1993, plaintiff called Millard Fillmore Hospital requesting a referral to a CFS specialist (T. 331).

## DISCUSSION

### I. Scope of Judicial Review.

The Social Security Act states that, upon review of the Secretary's decision by the district court, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which a "reasonable mind might

accept as adequate to support a conclusion...." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938), *quoted in Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991).

█ Under these standards, the scope of judicial review of the Secretary's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Secretary. *Richardson, supra,* 402 U.S. at 401, 91 S.Ct. at 1427. The court's sole inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Secretary. *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir.1982). The Secretary's determination cannot be upheld, however, when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Grey v. Heckler,* 721 F.2d 41, 44 (2d Cir. 1983); *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979).

## II. Chronic Fatigue Syndrome.

█ Plaintiff, *pro se,* contends that the ALJ erred in several respects. Plaintiff's strongest argument is that the ALJ improperly rejected her testimony about her subjective complaints of chronic fatigue and pain. Upon review of the record as a whole in light of the Secretary's regulatory policies and caselaw pertaining to claims of disability due to CFS, I agree with plaintiff's position.

█ The regulations require the ALJ to consider the claimant's subjective complaints about her symptoms, "such as pain, fatigue, shortness of breath, weakness, or nervousness," 20 C.F.R. § 404.1529(b), at each step

of the sequential evaluation process.[3] 20 C.F.R. § 404.1529(d).

As recently stated in Social Security Ruling ("SSR") 95–5p, "[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, careful consideration must be given to any available information about symptoms." SSR 95–5p, 1995 WL 670415(SSR) at *1 (1995) (reiterating longstanding SSA policy regarding evaluation of symptoms); *see also* 20 C.F.R. § 404.1529(c)(3). When assessing the claimant's residual functional capacity ("RFC") at step five, the ALJ "must describe the relationship between the medically determinable impairment(s) and the conclusions regarding functioning which have been derived from the evidence, and must include a discussion of why reported daily activity limitations or restrictions are or are not reasonably consistent with the medical and other evidence." SSR 95–5p, 1995 WL 670415(SSR) at *1.

█ While an ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment regarding her allegations of pain, fatigue and other symptoms, the ALJ must do so in light of medical findings and other evidence regarding the true extent of the pain alleged. *Mimms v. Heckler,* 750 F.2d 180, 186 (2d Cir.1984); *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979). Thus:

> In instances in which the adjudicator has observed the individual, the adjudicator is not free to accept or reject that individual's complaints solely on the basis of such personal observations. Rather, in all cases in which pain or other symptoms are alleged, the determination or decision rationale

---

3. The regulations establish a five-step sequence for evaluating disability claims, as follows:
   1. An individual who is working and engaging in substantial gainful activity will not be found to be disabled regardless of medical findings;
   2. An individual who does not have a "severe" impairment will not be found to be disabled;
   3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding

of disabled will be made without consideration of vocational factors;
   4. If an individual is capable of performing work he or she has done in the past, a finding of not disabled must be made;
   5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.
   20 C.F.R. § 404.1520.

must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work. . . .

SSR 95–5p, 1995 WL 670415(SSR) at *2.

The Secretary has also adopted a written policy for evaluating claims premised on chronic fatigue syndrome. This policy provides, in pertinent part as follows:

Chronic Fatigue Syndrome (CFS) . . . is a systemic disorder consisting of a complex of variable signs and symptoms which may vary in duration and severity. The etiology and pathology of the disorder have not been established. Although there are no generally accepted criteria for the diagnosis of cases of CFS, an operational concept is used by the medical community. There is no specific treatment, and manifestations of the syndrome are treated symptomatically.

CFS is characterized by the presence of unexplained fatigue and by the chronicity of other symptoms. The most prevalent symptoms include episodes of low-grade fever, myalgias, headache, painful lymph nodes, and problems with memory and concentration. These symptoms fluctuate in frequency and severity and may be seen to continue over a period of many months. Physical examination may be within normal limits. Individual cases must be adjudicated on the basis of the totality of the evidence, including the clinical course from the onset of the illness, symptoms, signs, and laboratory findings. Consideration should be given to onset, duration, severity and residual functional capacity following the sequential evaluation process.

Program Operations Manual System ("POMS") § DI 24575.005 (1993) (*quoted in Rose v. Shalala*, 34 F.3d 13, 16–17 (1st Cir. 1994)); *see also Williams v. Shalala*, 1995 WL 328487, at *4–5 (W.D.N.Y.).

The Secretary's policy is further reflected in professional guidelines for the evaluation and study of CFS cases, developed by the International Chronic Fatigue Syndrome Study Group. *See* Fudka, Straus, Hickie, Sharpe, Dobbins and Komaroff, *The Chronic Fatigue Syndrome: A Comprehensive Approach to Its Definition and Study*, Annals of Internal Medicine, Vol. 121, No. 12, pp. 953–59 (December 15, 1994). These guidelines describe CFS as follows:

. . . a clinically defined condition characterized by severe disabling fatigue and a combination of symptoms that prominently features self-reported impairments in concentration and short-term memory, sleep disturbances, and musculoskeletal pain. Diagnosis of the chronic fatigue syndrome can be made only after alternative medical and psychiatric causes of chronic fatiguing illness have been excluded. No pathognomonic signs or diagnostic tests for this condition have been validated in scientific studies; moreover, no definitive treatments for it exist. Recent longitudinal studies suggest that some persons affected by the chronic fatigue syndrome improve with time but that most remain functionally impaired for several years.

*Id.* at 953. The guidelines recommend CFS classification if, after other diagnostic possibilities have been excluded through a series of clinical examinations and testing, the subject reports persistent or relapsing fatigue for 6 or more consecutive months and exhibits four or more of the following symptoms concurrently for 6 or more consecutive months:

1. impaired memory or concentration;

2. sore throat;

3. tender cervical or axillary lymph nodes;

4. muscle pain;

5. multi-joint pain;

6. new headaches;

7. unrefreshing sleep; and,

8. post-exertion malaise.

*Id.* at 955.

As suggested by these guidelines and by the Secretary's own policy statements, and as several cases have held, CFS is recognized by the Social Security Administration

as a disease which, while not specifically addressed in the Listings, may produce symptoms which "significantly impair [a] claimant's ability to perform even sedentary work...." *Rose v. Shalala, supra,* 34 F.3d at 17; *see also Sisco v. U.S. Dept. of Health and Human Services,* 10 F.3d 739 (10th Cir. 1993); *Thaete v. Shalala,* 826 F.Supp. 1250 (D.Colo.1993); *Reed v. Secretary of Health and Human Services,* 804 F.Supp. 914 (E.D.Mich.1992). In such cases, because the methods for diagnosing chronic fatigue syndrome are limited, the credibility of the claimant's testimony regarding her symptoms takes on "substantially increased" significance in the ALJ's evaluation of the evidence. *Reed, supra,* 804 F.Supp. at 918.

For example, in *Williams v. Shalala, supra,* the ALJ found that the plaintiff had failed to establish disability based on CFS. In doing so, the ALJ rejected the plaintiff's testimony regarding her subjective complaints of pain as "wholly unsubstantiated by objective medical findings." 1995 WL 328487 at *6. Upon review, the court found that the ALJ's rejection of the plaintiff's credibility was not supported by substantial evidence. According to the court, because the plaintiff's complaints "were entirely consistent with the symptomology for CFS recognized by the Secretary in § DI 24575.005 ...," the ALJ's rejection of the plaintiff's testimony should have been accompanied by a more detailed explanation or analysis of the extent to which her fatigue and pain restricted her residual functional capacity. Instead, the ALJ's decision reflected a "blind reliance on a lack of objective findings...." *Id.* (quoting *Rose v. Shalala, supra,* 34 F.3d at 19); *see also Sisco, supra,* 10 F.3d at 744 ("[T]here is no 'dipstick' laboratory test for chronic fatigue syndrome.").

In this case, plaintiff alleged disability due to CFS (*see, e.g.,* T. 93). This claim was also pointed out to the ALJ by plaintiff's testimony at the hearing (T. 49, 54–55). In addition, Dr. Lanham, a CFS specialist, diagnosed plaintiff as suffering from CFS in his April 7, 1994 letter to the Appeals Council (T. 351–52). However, the Appeals Council rejected this letter ostensibly because it did not state that plaintiff was disabled on or before the

hearing date (T. 7–8). The letter did, however, diagnose plaintiff as suffering from CFS for the past six and one-half years (T. 351).

Here, the ALJ discredited plaintiff's subjective complaints of pain because "no physician has ever suggested that she suffers from a chronic fatigue syndrome." (T. 23). While the ALJ did not have Dr. Lanham's opinion when she issued her decision, her findings are nevertheless erroneous. For one thing, plaintiff's condition was repeatedly diagnosed by her doctors as "fibromyalgia" which, according to the professional guidelines cited above, is not inconsistent with a diagnosis of CFS. *See* Fudka, *et al., The Chronic Fatigue Syndrome, supra* at 956.

■ In addition, the record contains several medical reports reflecting plaintiff's long-term complaints of extreme fatigue, muscle and joint pain, concentration problems, and other symptoms consistent with a diagnosis or classification of CFS (T. 174, 177, 180–81, 186, 189, 194–95, 274, 277, 283, 285–86). Therefore, when presented with documented allegations of symptoms which are "entirely consistent with the symptomology" for evaluating CFS, *Williams v. Shalala, supra,* the Secretary cannot rely on the ALJ's rejection of the claimant's testimony based on the mere absence of objective evidence. Instead, the Secretary's decision in such cases should reflect a recognition of the increased significance to be given the claimant's credibility in assessing residual functional capacity. *Reed v. Secretary of Health and Human Services, supra,* 804 F.Supp. at 918.

Here, the ALJ found plaintiff's testimony regarding her subjective complaints of pain to "greatly exaggerated and totally self-serving" (T. 23). According to the ALJ, there was no objective medical evidence to support the limitations that plaintiff complained of (*Id.*). Specifically, the ALJ found that despite her pain and fatigue, plaintiff continued to work, attend school and obtain good grades, socialize for the entire summer, and clean and cook for herself (T. 21, 23).

This conclusion was contrary to substantial evidence. First, as discussed above, plaintiff's subjective complaints were in fact supported by competent medical evidence.

Second, the ALJ grossly mischaracterized the record in finding that plaintiff has the functional capacity to perform all of these exertional activities on a daily or regular basis (T. 23). To the contrary, plaintiff testified that she last worked in August, 1989, when she first applied for disability (*see* T. 60, 92, 322). Plaintiff also testified that she cleans her apartment sporadically, and sometimes days and weeks go by before she cleans again (T. 51, 59). In college, plaintiff took three classes, but had to drop out of two due to her fatigue and other symptoms (*see, e.g.,* T. 54, 62–63). Although she got a B plus in one class, she received incompletes in the other two classes (T. 54). In addition, plaintiff testified that she has an inability to concentrate and has short-term memory loss (all consistent with CFS) while in school (*Id.*). On several days during the summer that plaintiff socialized, she was "still tired through it all" (T. 79). The ALJ failed to properly resolve these inconsistencies as she is required to do under the regulations, policies and caselaw discussed above.

Under these circumstances, the ALJ erred in rejecting plaintiff's testimony based on a lack of medical diagnoses or objective findings, and she failed to give increased significance to plaintiff's testimony regarding her symptoms.

The Secretary's policy statement regarding CFS was promulgated after the ALJ issued her decision, but before the Appeals Council had affirmed the decision. Accordingly, the policy statement should have been acknowledged and applied to the present case. *See, e.g., Williams v. Shalala, supra,* 1995 WL 328487 at *4.

Accordingly, I find that the Secretary's decision is not supported by substantial evidence.

## III. Appeals Council Decision

█ The ALJ disregarded plaintiff's subjective complaints of pain because no CFS specialist had diagnosed her as suffering from the disease (T. 23). However, the record indicates that plaintiff attempted to locate a specialist (T. 331). In fact, plaintiff began seeing a CFS specialist. In her appeal to the Appeals Council, plaintiff submit-

ted a letter, dated April 7, 1994, from Dr. Richard Lanham (T. 351–52). The letter indicates that Dr. Lanham has been treating plaintiff for her CFS, that she can not now work, and that she has had CFS for that last six and one-half years.

Here, plaintiff's predicament is a "Catch 22." The ALJ's decision chided plaintiff for failing to have a specialist diagnose her with CFS. When plaintiff provided the necessary documentation, the Appeals Council rejected Dr. Lanham's letter as not having any bearing on the time period proceeding the ALJ's decision on September 13, 1993, even though the letter stated that plaintiff has been diagnosed as having CFS for the past six and one-half years. The Secretary's position is illogical and legally erroneous.

Accordingly, the April 7, 1994 letter must be considered on rehearing.

## IV. Additional Evidence

As provided in the Act, the court "may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding...." 42 U.S.C. § 405(g) (1988). The Second Circuit has summarized the requirements for introduction of additional evidence as follows:

> [A]n appellant must show that the proffered evidence is (1) " 'new' " and not merely cumulative of what is already in the record," *Szubak v. Secretary of Health & Human Servs.,* 745 F.2d 831, 833 (3d Cir. 1984), and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative.... The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently. Finally, claimant must show (3) good cause for her failure to present the evidence earlier.

*Tirado v. Bowen,* 842 F.2d 595, 597 (2d Cir. 1988) (also citing *Cutler v. Weinberger,* 516 F.2d 1282, 1285 (2d Cir.1975); *Chaney v.*

*Schweiker,* 659 F.2d 676, 679 (5th Cir.1981); *Tolany v. Heckler,* 756 F.2d 268, 272 (2d Cir.1985)).

In this case, plaintiff has submitted a letter, dated January 17, 1996, from her treating physician, Dr. Lanham. The letter indicates that Dr. Lanham has been treating plaintiff for her CFS and that she has been disabled since August, 1989. As plaintiff has met the requirements set out in *Tirado,* the ALJ should consider the additional evidence on rehearing.

### CONCLUSION

For the foregoing reasons, the Secretary's motion for judgment on the pleadings (Item 8) is denied, and the case is remanded to the Secretary pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the legal standards and requirements discussed herein.

**SO ORDERED.**