October 3, 1997.

Arthur R. **SCHAFFER**, Plaintiff,

v.

Kenneth S. **APFEL**, Commissioner of Social Security, Defendant.

No. 96–CV–799H.

United States District Court, W.D. New York.

Dec. 2, 1997.

Arthur R. Schaffer, Akron, NY, pro se.

Denise E. O'Donnell, United States Attorney, Jane B. Wolfe, Assistant United States Attorney, of Counsel, Buffalo, NY, for the Government.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

In accordance with 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct all further proceedings in this case, including entry of judgment. Plaintiff initiated this action to seek review of the final decision of the Commissioner of Social Security (the "Commissioner")[1] denying his application for Supplemental Security Income ("SSI") benefits, and the Commissioner has moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). For the following reasons, the Commissioner's motion is denied.

### BACKGROUND

Plaintiff was born on April 25, 1948 (T. 36, 72).[2] He has a general equivalency high school diploma, and took some business courses at a community college. He has past relevant work experience as a self-employed contractor and a maintenance worker. He stopped working in June, 1991 when he was laid off from his job as a maintenance supervisor at a nursing home (T. 38, 102).

On January 24, 1994, plaintiff applied for SSI benefits. He alleged disability as of October 1, 1992 due to "diabetes and related complications of leg pain ... fatigue [and] dizziness" (T. 98). His application was denied initially and on reconsideration. On August 21, 1995 a hearing was held before Administrative Law Judge ("ALJ") Bruce Mazzarella. Plaintiff testified and was represented by counsel (T. 30–71).

---

1. Kenneth S. Apfel was sworn in as Commissioner of Social Security on September 29, 1997, and is hereby substituted for Acting Commissioner John J. Callahan as the named defendant in this action. See Fed.R.Civ.P. 25(d)(1); 42 U.S.C. § 405(g).

2. References preceded by "T" are to page numbers of the transcript of the administrative record, filed by defendant as part of the answer to the complaint.

On December 27, 1995, ALJ Mazzarella found that plaintiff was not disabled within the meaning of the Social Security Act. According to the ALJ, the medical evidence established that plaintiff suffered from diabetes and peripheral vascular disease which, considered individually or in combination, did not meet or equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ found that plaintiff's impairments prevented him from returning to his past relevant work as a nursing home maintenance supervisor, but that plaintiff had the residual functional capacity to perform the full range of sedentary work.[3] The ALJ found that plaintiff's residual functional capacity was not "significantly compromised by additional nonexertional limitations" (T. 19). Accordingly, considering plaintiffs age, education and work experience, and using Rule 201.21 of Table 1, 20 C.F.R. Pt. 404, subpt. P, App. 2 (the "Grids") "as a framework for decisionmaking," the ALJ found that plaintiff was not disabled (*id.*).

On September 24, 1996, the ALJ's decision became the final determination of the Commissioner when the Appeals Council denied plaintiffs request for review (T. 4–5). On November 25, 1996, plaintiff filed this action pro se for judicial review of the Commissioner's determination.

On June 16, 1997, the government moved for judgment on the pleadings, in accordance with Fed.R.Civ.P. 12(c), on the ground that the Commissioner's determination is supported by substantial evidence in the record. On September 4, 1997, oral argument on the government's motion was heard by the undersigned. Plaintiff appeared *pro se*. He advised the court that he was scheduled for a neurological evaluation in the near future, and requested the opportunity to submit the report of that evaluation as additional medical evidence in support of his claims in this case. The court granted plaintiff's request,

and allowed the government to file a response.

The court has received the additional materials submitted by plaintiff (Item 14) and the government's memorandum in response (Item 15). For the following reasons, the government's motion for judgment on the pleadings is denied, and the case is remanded to the Commissioner.

### DISCUSSION

■ The Social Security Act provides that upon judicial review of a denial of claim for SSI or disability insurance benefits the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). This procedure, referred to as a "sentence six remand," *see Shalala v. Schaefer*, 509 U.S. 292, 297–98, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), is only appropriate when the claimant has demonstrated the following:

> [T]hat the proffered evidence is (1) " 'new' and not merely cumulative of what is already in the record," and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative.... The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide [the] claimant's application differently. Finally, [the] claimant must show (3) good cause for [his or] her failure to present the evidence earlier.

*Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir.1988)(quoting *Szubak v. Secretary of Health & Human Services*, 745 F.2d 831, 833 (3d Cir.1984); also citing *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir.1975), and

---

3. "Sedentary work" is defined in the Commissioner's regulations as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain

amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

*Tolany v. Heckler,* 756 F.2d 268, 272 (2d Cir.1985)); *see also Fragale v. Chater,* 916 F.Supp. 249, 255 (W.D.N.Y.1996).

■ In this case, plaintiff has submitted a report from Dr. Tomas Holmlund of the Dent Neurologic Institute to Dr. Steven Flaschner, plaintiff's treating physician. Dr. Flaschner referred plaintiff to Dr. Holmlund for a neurologic evaluation, which took place on September 16, 1997. Dr. Holmlund's report states as follows:

HISTORY OF PRESENT ILLNESS: He apparently did quite well up until 1991 when, in a subacute fashion, started to experience fatigue which has persisted ever since. The fatigue is always present, but it becomes occasionally "extreme" and then lasts one to four days. This can occur a few times every month. During these periods of extreme fatigue, he cannot do very much. He stays in bed 18 out of 24 hours, although, he apparently cannot sleep. He is just fatigued. He eats poorly, feels exhausted, and he "cannot function."

(Item 14, Ex. 1). Dr. Holmlund concluded that plaintiff's problem was "difficult." He could not find a "conventional" neurologic explanation for plaintiff's condition. He explained to plaintiff that "there are a number of people who experience symptoms similar to his. We simply have not been able to establish a diagnosis" (*id.,* p. 2). Dr. Holmlund recommended continued psychiatric referral, and that "[t]he next step would be to have [plaintiff] engaged in the Chronic Fatigue Support Group and possibly hook him up with a physician that sees a number of these patients since treatment is purely symptomatic and one of reassurance, etc." (*id.*).

Plaintiff has also submitted a letter dated October 2, 1997 from Dr. Mark A. Varallo, a psychiatrist at the Varallo Guidance Center, which states that plaintiff has been his patient since January 31, 1996. In Dr. Varallo's opinion, plaintiff "is unable to return to work as I find him clinically depressed, suffering from anxiety and enduring symptoms related to chronic fatigue" (Item 14, Ex. 3).

This evidence is new and not cumulative. In fact, it is the first mention of the possibility that plaintiff is suffering from chronic fatigue syndrome. As recognized in *Fragale v. Chater, supra,* the Commissioner has adopted a written policy for evaluating claims premised on chronic fatigue syndrome. This policy provides as follows:

Chronic Fatigue Syndrome (CFS) ... is a systemic disorder consisting of a complex of variable signs and symptoms which may vary in duration and severity. The etiology and pathology of the disorder have not been established. Although there are no generally accepted criteria for the diagnosis of cases of CFS, an operational concept is used by the medical community. There is no specific treatment, and manifestations of the syndrome are treated symptomatically.

\*    \*    \*    \*    \*    \*

CFS is characterized by the presence of persistent unexplained fatigue and by the chronicity of other symptoms. The most prevalent symptoms include episodes of low-grade fever, myalgias, headache, painful lymph nodes, and problems with memory and concentration. These symptoms fluctuate in frequency and severity and may be seen to continue over a period of many months. Physical examination may be within normal limits.

Individual cases must be adjudicated on the basis of the totality of the evidence, including the clinical course from the onset of the illness, symptoms, signs, and laboratory findings. Consideration should be given to onset, duration, severity and residual functional capacity following the sequential evaluation process.

Program Operations Manual System ("POMS") § DI 24515.075 (attached to Item 15); (*see also Rose v. Shalala,* 34 F.3d 13, 16–17 (1st Cir.1994)); *Fragale v. Chater,* 916 F.Supp. at 253; *Williams v. Shalala,* 1995 WL 328487, at \*4–5 (W.D.N.Y. May 19, 1995).

The Commissioner's policy is further reflected in professional guidelines for the evaluation and study of CFS cases, developed by the International Chronic Fatigue Syndrome Study Group. *See* Fudka, Straus, Hickie, Sharpe, Dobbins and Komaroff, *The Chronic*

*Fatigue Syndrome: A Comprehensive Approach to Its Definition and Study, Annals of Internal Medicine,* Vol. 121, No. 12, pp. 953–59 (December 15, 1994) (cited in *Fragale v. Chater, supra* ). These guidelines describe CFS as follows:

> ... a clinically defined condition characterized by severe disabling fatigue and a combination of symptoms that prominently features self-reported impairments in concentration and short-term memory, sleep disturbances, and musculoskeletal pain. Diagnosis of the chronic fatigue syndrome can be made only after alternative medical and psychiatric causes of chronic fatiguing illness have been excluded. No pathognomonic signs or diagnostic tests for this ·condition have been validated in scientific studies; moreover, no definitive treatments for it exist. Recent longitudinal studies suggest that some persons affected by the chronic fatigue syndrome improve with time but that most remain functionally impaired for several years.

*Id.* at 953. The guidelines recommend CFS classification if, after other diagnostic possibilities have been excluded through a series of clinical examinations and testing, the subject reports persistent or relapsing fatigue for 6 or more consecutive months and exhibits four or more of the following symptoms concurrently for 6 or more consecutive months:

1. impaired memory or concentration;

2. sore throat;

3. tender cervical or axillary lymph nodes;

4. muscle pain;

5. multi-joint pain;

6. new headaches;

7. unrefreshing sleep; and

8. post-exertion malaise.

*Id.* at 955; *Fragale v. Chater, supra.*

■ As suggested by these guidelines and by the Commissioner's own policy statements, and as several cases have held, CFS is recognized by the Social Security Administration as a disease which, while not specifically addressed in the Listings, may produce symptoms which "significantly impair [a] claimant's ability to perform even sedentary work...." *Rose v. Shalala, supra,* 34 F.3d at 17; *see also Sisco v. U.S. Dept. of Health and Human Services,* 10 F.3d 739 (10th Cir. 1993); *Fragale v. Chater, supra,* 916 F.Supp. at 253–54; *Thaete v. Shalala,* 826 F.Supp. 1250 (D.Colo.1993); *Reed v. Secretary of Health and Human Services,* 804 F.Supp. 914 (E.D.Mich.1992).

Considered in light of the Commissioner's policy and the holdings in these cases, I find that the additional evidence proffered by plaintiff meets the remaining requirements for a sentence six remand. The report of Dr. Holmlund and the opinion expressed by Dr. Varallo are material and probative of plaintiff's condition, and raise the reasonable possibility that a diagnosis of chronic fatigue syndrome could influence the Commissioner to decide plaintiff's claim differently. Further, in view of the lack of a clinically accepted methodology for diagnosis of CFS, and the fact that diagnosis "can be made only after alternative medical and psychiatric causes of chronic fatiguing illness have been excluded," I find that plaintiff has demonstrated good cause for his failure to present this evidence earlier.

In addition, it is this court's opinion that plaintiff meets the criteria set forth in the Commissioner's regulations for obtaining a consultative medical examination to inform the Commissioner's determination on remand. ·*See* 20 C.F.R. §§ 416.919, 416.919a(b).[4]

---

**4.** The regulations provide that "[t]he decision to purchase a consultative examination will be made on an individual case basis ...," 20 C.F.R. § 416.919, in accordance with the following criteria:

> A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim. Other situations, including but not limited to the situations listed

below, will normally require a consultative examination:
> (1) The additional evidence needed is not contained in the records of your medical sources;
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;

Finally, when an action is remanded pursuant to sentence six, the district court generally retains jurisdiction until the Commissioner files a modification or affirmation of his prior determination with the district court, along with a transcript of the additional record and testimony upon which the Commissioner's action is based. 42 U.S.C. § 405(g); *Sullivan v. Hudson*, 490 U.S. 877, 885, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989). Judgment is then entered in the district court action only after the Commissioner makes the required filing. *Shalala v. Schaefer, supra*, 509 U.S. at 297–98; *Wilsey v. Secretary of Health and Human Services*, 1995 WL 274499, at *1 (N.D.N.Y.1995).

## CONCLUSION

Based on the foregoing, the government's motion for judgment on the pleadings (Item 9) is denied, and the case is hereby remanded to the Commissioner under 42 U.S.C. 405(g), sentence six. The court shall retain jurisdiction over this action to review the final decision of the Commissioner following remand. The Clerk of the Court is directed to place this action on the court's suspense calendar pending the outcome of the proceedings at the administrative level. The government is also directed to inform the court by way of motion or otherwise immediately upon the filing of the Commissioner's modification or affirmation, or upon receipt of other information pertinent to the conduct of further proceedings in this case.

**SO ORDERED.**

(3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;

(4) A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source; or

(5) There is an indication of a change in your condition that is likely to affect your ability to work, or, if you are a child, your functioning, but the current severity of your impairment is not established.

20 C.F.R. § 416.919a(b).