Stella BISCHOF, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

No. 98 CV 4401.

United States District Court, E.D. New York.

Oct. 18, 1999.

Douglas C.J. Brigandi, Bayside, NY, for plaintiff.

Lorette E. Lynch, United States Attorney, Eastern District of New York, (Beth P. Schwartz, of counsel), Brooklyn, NY, for defendant.

MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff Stella Bischof brought this action to review a final determination by the Commissioner of Social Security that plaintiff is not disabled and is not entitled to disability insurance benefits under the Social Security Act. The Commissioner now moves for judgment on the pleadings, and plaintiff cross-moves for judgment on the pleadings. This court has jurisdiction under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

This is the second time this case appears here. Plaintiff applied for disability benefits on April 1, 1991. After the denial of her application, Administrative Law Judge Sol Wieselthier held a hearing and subsequently upheld the denial of benefits on August 22, 1992. The Appeals Council denied review, and plaintiff sought review here. On stipulation of the parties, this court remanded the case to the Commissioner for further administrative action on August 15, 1995. Administrative Law Judge Manuel Cofresi held a supplemental hearing on July 16, 1997 and denied benefits on December 30, 1997. The Appeals Council denied review on April 27, 1998, and this action followed.

## I.

Plaintiff, 50 years old at the time of the supplemental hearing, worked for 21 years as a secretary for Mobil Oil. She left her job on May 11, 1990, and claims disability from that date due to chronic fatigue syndrome.

Administrative Law Judge Corfesi made the following formal findings. Plaintiff has not engaged in substantial gainful activity since May 11, 1990. She met the disability insured status requirements of the Act from that date through December 31, 1995. Plaintiff suffered from chronic fatigue syndrome, an impairment that is severe but that does not meet or equal the criteria of any of the impairments listed in the social security regulations, 20 C.F.R. § 404, App. 1, Subpt. P. Plaintiff's statements concerning her impairment and its impact on her ability to work were not entirely credible in light of her own testimony and the reports of treating and examining practitioners. Her capacity for sedentary work was diminished by her alleged fatigue, which made it difficult for her to stand and walk for any length of time or to sit for prolonged periods without alternating positions. Plaintiff nonetheless retained the residual functional capacity to lift and carry ten pounds on the date her insured status expired. In her past work as a secretary, she was not required to lift more than ten pounds or remain on her feet for prolonged periods and was able to alternate positions. Her impairment thus did not prevent her from performing her past relevant work. Plaintiff was not under a disability at any time through the date her insured status expired.

## II.

The relevant medical evidence may be summarized as follows.

### A. Treating Physicians

Dr. Moises Grinberg, plaintiff's internist, saw her on May 8 and 29, 1990. She complained of dizziness, fatigue and low-grade fever. The doctor's clinical tests including a pelvic sonogram, a CAT scan and assorted blood tests, all yielded normal results.

Dr. Glen Marin treated plaintiff on June 7, 1990 and February 8, 1991. Plaintiff described her symptoms as dizziness, fatigue, weight loss and anxiety. Blood tests performed by Dr. Marin on June 9, 1990, August 21, 1990, and February 13, 1991, showed increasing levels of antibodies to the Epstein–Barr Virus, a herpes-like virus often associated with infectious mononucleosis and Chronic Fatigue Syndrome. Other clinical and laboratory tests showed normal results. Dr. Marin diagnosed plaintiff with "Chronic [Epstein–Barr] Syndrome."

Dr. Alfred Brockunier saw plaintiff in July 1990 at Memorial Sloan Kettering Cancer Center. A pelvic examination revealed an inflamed cervix, but the results of a biopsy and other laboratory tests were normal.

Dr. Stuart Berger treated plaintiff from 1990 to 1994. Throughout that period, plaintiff told Dr. Berger she suffered from symptoms including dizziness, joint and muscle pain, inability to concentrate, fatigue and pelvic pain of unknown origin. In a report dated April 26, 1991 and a letter dated February 4, 1992, Dr. Berger stated that laboratory tests indicated a

"reactivated Epstein Barr infection," the presence of high antibody levels for Candida albicans, a type of yeast infection, and food allergies. It is unclear whether Dr. Berger performed the tests himself or relied on tests performed by Dr. Marin.

In his 1991 report, Dr. Berger concluded that plaintiff could lift and carry "a few" pounds for up to one-third of a workday, stand or walk for less than two hours per day and sit without changing positions for less than six hours per day. He stated that "[s]ince patient requires rest and fatigues easily, all activities are limited." Treatment consisted of bed rest and vitamin therapy for Chronic Fatigue Syndrome, and "desensitation" (sic) injections and Nystatin for Candida albicans.

In his February 4, 1992 letter, Dr. Berger stated that his primary diagnosis was Chronic Fatigue Syndrome "based on the [Centers for Disease Control] case definition and positive [Epstein Barr Virus] reports." He also noted a secondary diagnosis of Candida albicans and multiple food allergies. Dr. Berger classified plaintiff's Chronic Fatigue Syndrome symptoms as "particularly debilitating." He stated she was unable to bend, stoop, walk, stand or sit for any prolonged period without rest, and concluded that "she is unable to work."

Plaintiff saw Dr. Grinberg again in September, 1991. She complained of frequent fatigue but stated that her pelvic pain had diminished. Dr. Grinberg reported that plaintiff was "mostly not symptomatic."

Plaintiff began treatment with Dr. Ricki Mitchell on an unspecified date in 1994. In a report dated December 27, 1995, Dr. Mitchell stated that plaintiff reported symptoms including weakness, dizziness, low grade fever, pelvic and joint pain, fatigue and inability to concentrate. He found that plaintiff could lift only five pounds, stand or walk for half an hour without interruption and a maximum of two hours per day, and sit for only three hours per day and only half an hour without interruption. Based on plaintiff's reported symptoms and her earlier Epstein–Barr tests, Dr. Mitchell concluded that "the severity and chronicity" of plaintiff's symptoms "limit[ed] all aspects of her life" and made it "impossible for her to work at this time."

On June 28, 1997, Dr. Mitchell filled out a preprinted "Statement of Functional Capacity" prepared by plaintiff's long-term disability insurance carrier. Dr. Mitchell stated that his diagnosis was "chronic fatigue and immune dysfunction syndrome." He noted positive test results for Epstein Barr Virus, Candida albicans and food allergy. It is not clear whether he performed new tests. Dr. Mitchell noted that plaintiff's condition imposed "some limitation" on her ability to sit, stand and engage in concentrated visual attention, and stated that she could life zero to fifteen pounds for less than twenty percent of a workday. The report concluded that plaintiff's condition was "unimproved" and that she remained "totally disabled" for any occupation.

### B. Consulting Physicians

Dr. Howard Finger conducted a consultative examination of plaintiff on May 9, 1991. He noted that plaintiff complained of severe fatigue, pelvic pain and muscle weakness, but that she also stated "she is able to function better now." Dr. Finger found plaintiff to be "alert, well-developed [and] in no acute distress." He also found that she had "4+/5 muscle strength" in her lower extremities and grip, but the record includes no explanation of the meaning of this result. Her "Romberg sign," a measure of dizziness as a result of loss of joint sensation, was negative. Dr. Finger's overall impression was that plaintiff suffered from Chronic Fatigue Syndrome.

Dr. Jorge Oldan conducted a consultative psychiatric examination of plaintiff on June 12, 1991. He stated that she was alert and responsive and found that no psychiatric treatment was indicated.

Dr. T. Mulcahy, a physician for the New York State disability determination service, reviewed the record on July 6, 1991 and filled out a "Residual Functional Capacity Assessment" form. Dr. Mulcahy did not specify the basis for his findings beyond indicating that he did not review statements from treating or examining physicians. Dr. Mulcahy concluded that plaintiff suffered from Chronic Fatigue Syndrome but could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for about six hours per day and sit for about six hours per day.

Dr. Azariah Eshkenazi, a psychiatrist and neurologist, conducted a consultative "mental status" examination of plaintiff on May 23, 1996. Plaintiff told Dr. Eshkenazi she "felt much better and obviously is able to function," but that her symptoms came and went. Dr. Eshkenazi found that plaintiff's mental capacity to do work-related activities was "unlimited/very good." Administrative Law Judge Cofresi did not cite Dr. Eshkenazi's findings in his decision.

Dr. Daniel Faierman conducted a consultative examination of plaintiff on June 27, 1996. He reported symptoms similar to those reported by every other physician who examined plaintiff. The results of clinical tests including a CAT scan, magnetic resonance imaging and blood tests were all normal. Dr. Faierman concluded that plaintiff was physically healthy and attributed her symptoms to a "psychiatric problem."

### C. Medical Experts

Dr. Charles Plotz testified at the 1992 hearing before Administrative Law Judge Wieseltheir, and Dr. Richard Wagman appeared at the 1997 hearing before Administrative Law Judge Cofresi. Both experts concluded that plaintiff's ailment did not meet or equal any listed impairments. Both also expressed doubts regarding the medical basis and effectiveness of the treatments prescribed by Dr. Berger. Both noted that positive Epstein–Barr and Candida tests indicate exposure to a virus but not necessarily an active infection. The experts also emphasized the lack of clinical explanation for plaintiff's reported dizziness.

Dr. Plotz concluded that there was "no physical reason" why plaintiff could not engage in sustained, sedentary work activity. Dr. Wagman concluded that the record reflected "a great deal of symptomatology and essentially no findings." When questioned by plaintiff's counsel, Dr. Wagman also noted that the record was consistent and did not contradict the diagnoses of Chronic Fatigue Syndrome by Drs. Berger, Mitchell and Finger.

### D. Plaintiff's Testimony

Plaintiff testified at both her hearings that since 1990 she had suffered from a series of symptoms including included fatigue, muscle and joint pain, weakness, dizziness and pelvic pain. She said her symptoms came and went, often getting worse in spring. At the time of the second hearing her daily life consisted largely of watching television and talking on the phone. She performed cleaning and other household with the help of her husband and a cleaning woman. She was able to shop for food with her husband's help, drove her car several times a week and visited friends approximately once a week. She had traveled to Florida approximately three times in the two years prior to the 1997 hearing. On some days she did not get out of bed and on others she did not get dressed. While she once painted as a hobby, she stopped doing so because the "fumes" aggravated her "environmental allergies." Plaintiff attributed her symptoms to chronic fatigue syndrome and to "metal clips" that were left in her body following surgery in 1986 to remove an ovarian cyst.

## II.

The court reviews the Commissioner's findings only to determine whether they are "supported by substantial evidence in the record as a whole or are

based on an erroneous legal standard." *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir.1997); *see* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla," which means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

### A.

Administrative Law Judge Cofresi ruled that plaintiff suffered from a severe impairment but was capable of performing her past work. This ruling was largely based on his determination that plaintiff's testimony was not entirely credible, and that the opinions of her treating physicians should be given very little weight. Both of these conclusions, in turn, were based on the lack of "detailed, clinical, diagnostic evidence" to support her claim of disability.

Claims involving Chronic Fatigue Syndrome present something of a dilemma to the Commissioner. On one hand, the social security regulations require a claimant to demonstrate an impairment on the basis of "medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508. On the other hand, the prevailing medical definition of Chronic Fatigue Syndrome allows a diagnosis on the basis of "an individual's reported symptoms alone once other possible causes for the symptoms have been ruled out." Social Security Ruling SSR 99–2p, "Titles II and XVI: Evaluating Cases Involving Chronic Fatigue Syndrome (CFS)," 64 Fed.Reg. 23380, 23381 (April 30, 1999) (citing Annals of Internal Medicine, 121:953–9 (1994)).

In recognition of this dilemma, the Commissioner of Social Security has issued guidelines for use in claims involving Chronic Fatigue Syndrome. *See* Social Security Ruling SSR 99–2p; Program Operations Manual System, §§ DI 24515.007 (1997) (the "Program Operations Manual"

or the "Manual"). The guidelines in effect at the time of the administrative hearing before Administrative Law Judge Cofresi were contained in the Program Operations Manual. The Program Operations Manual states in pertinent part that

"Chronic Fatigue Syndrome (CFS) ... is a systemic disorder consisting of a complex of variable signs and symptoms which may vary in duration and severity. The etiology and pathology of the disorder have not been established. Although there are no generally accepted criteria for the diagnosis of cases of CFS, an operational concept is used by the medical community. . . ."

"CFS is characterized by the presence of persistent unexplained fatigue and by the chronicity of other symptoms. The most prevalent symptoms include episodes of low-grade fever, myalgias [muscle pain], headache, painful lymph nodes, and problems with memory and concentration. These symptoms fluctuate in frequency and severity and may be seen to continue over a period of many months. Physical examination may be within normal limits. Individual cases must be adjudicated on the basis of the totality of evidence, including the clinical course from the onset of the illness, symptoms, signs, and laboratory findings. Consideration should be given to onset, duration, severity and residual functional capacity following the sequential evaluation process."

*Weiner v. Apfel*, No. 98 cv 182, 1998 U.S.Dist. LEXIS 21424, at *48–49 (E.D.N.Y. 1998), quoting Program Operations Manual, §§ DI 24515.007 (1997).

■ Plaintiff's counsel brought the Program Operations Manual to the attention of Administrative Law Judge Cofresi. The Manual itself does not appear in the record, and the Administrative Law Judge made no reference to it in his decision. Courts have found the policy regarding Chronic Fatigue Syndrome as contained in the Manual to be binding on the Commis-

sioner. *Hilton v. Apfel,* No. 97 Civ. 1613, 1998 WL 241616 at *7, n. 7 (S.D.N.Y.1998); *Rose v. Shalala,* 34 F.3d 13, 17, n. 2 (1st Cir.1994).

██ Under this standard, an administrative law judge may not reject the opinions of treating physicians solely because they are based on a claimant's subjective complaints rather than specific medical signs or laboratory findings. *See Weiner,* 1998 U.S.Dist. LEXIS 21424 at *47–49; *Hilton,* 1998 WL 241616 at *6–9. An administrative law judge also may not find that a claimant's testimony regarding Chronic Fatigue Syndrome lacks credibility solely because it is unsupported by objective medical findings. *Fragale v. Chater,* 916 F.Supp. 249, 253–54 (W.D.N.Y. 1996); *Reddick v. Chater,* 157 F.3d 715, 723–24 (9th Cir.1998); *Sisco v. United States Dep't of Health & Human Svcs.,* 10 F.3d 739, 743 (10th Cir.1993).

### B.

██ In light of this standard, the Commissioner's finding that plaintiff was not disabled is not supported by the medical record. An administrative law judge must give considerable weight to the opinions of the treating physicians. 20 C.F.R. § 404.1527(d). Administrative Law Judge Cofresi accepted the views of the treating physicians as to whether plaintiff had a severe impairment, but rejected their assessments of her functional capacity, finding them unsupported by "detailed, clinical, diagnostic evidence."

Dr. Berger and Dr. Mitchell each treated plaintiff for Chronic Fatigue Syndrome for several years and each found her symptoms to be so debilitating that she could not hold a job. Dr. Marin agreed with the diagnosis of Chronic Fatigue Syndrome, as did two government physicians, Dr. Finger and Dr. Mulcahy.

Administrative Law Judge Cofresi nevertheless found that plaintiff "retained the residual functional capacity to lift and carry ten pounds" on December 31, 1995, the date her insured status expired. The basis for this finding is unclear. In fact, Dr. Mitchell found on December 27, 1995 that plaintiff could lift only five pounds on a very infrequent basis and that her symptoms limited "all aspects of her life." The Administrative Law Judge did note that Dr. Mitchell subsequently found that plaintiff could "lift and carry up to fifteen pounds for up to [twenty percent] of a workday." But this report was issued in 1997, two years after plaintiff's insured status expired. In addition, Dr. Mitchell concluded the same report by stating that plaintiff's condition was "unimproved" and that she was "totally disabled."

Every doctor who examined plaintiff in the seven years included in the medical record reported that she complained of a similar collection of symptoms. These included unexplained dizziness, fatigue, muscle and joint pain, low grade fever and inability to concentrate. The persistence of these symptoms over time is consistent with Chronic Fatigue Syndrome. *See* Program Operations Manual at §§ DI 24515.007 (1997); SSR 99–2p, 64 Fed.Reg. at 23381.

It is true that a wide variety of clinical tests performed over several years could detect nothing wrong. But at least three Epstein–Barr blood tests yielded positive results for either acute primary infection or reactivated infection or both. Elevated levels of Epstein–Barr antibodies are among the few laboratory results that might support a diagnosis of Chronic Fatigue Syndrome. *See* SSR 99–2p, 64 Fed. Reg. at 23382. In any event, "an extended medical history of 'nothing-wrong' diagnoses is not unusual for a patient [with Chronic Fatigue Syndrome]." *Rose,* 34 F.3d at 18.

That Administrative Law Judge Cofresi was aware of both the nature of Chronic Fatigue Syndrome and the uniformity of the medical record is demonstrated in the following exchange at the hearing between plaintiff's attorney and Dr. Wagman, the testifying physician.

[Atty:] [C]an chronic fatigue be diagnosed by laboratory tests?

[Physician:] No.

\* \* \* \* \* \*

[Atty:] So then we have to rely on the symptomatology [sic]?

[Physician:] Right.

\* \* \* \* \* \*

[Atty:] Are [plaintiff's symptoms as reported to her physicians] not all symptoms which could be associated with chronic fatigue?

[Physician:] They could be.

\* \* \* \* \* \*

[Atty:] Is there any documentation of any doctor who examined the claimant in the record that is inconsistent with these diagnoses?

[Physician:] No.

The Administrative Law Judge did not reject the diagnosis of Chronic Fatigue Syndrome. He instead viewed the lack of objective medical indicators as undermining the treating physicians' views regarding the severity of plaintiff's symptoms and her capacity to work. In doing so he acted without substantial evidence and in contravention of the Commissioner's policy on Chronic Fatigue Syndrome and the treating physician rule.

### C.

■ While a reviewing court must pay considerable deference to an administrative law judge's appraisal of the credibility of witnesses, such appraisals, like all of the Commissioner's findings, must be supported by substantial evidence. *See Weiner*, 1998 U.S.Dist. LEXIS 21412 at *51.

■ As noted, the Administrative Law Judge incorrectly discounted plaintiff's testimony on the ground that it was unsupported by specific objective evidence. His credibility assessment was also based on her testimony regarding her lifestyle,

which he found undermined the claim that she was totally disabled.

This reasoning, too, is unsupported by the record. For instance, the Administrative Law Judge stated that plaintiff testified that she was able to socialize and take care of her personal needs. Plaintiff did testify that she could shop and clean, but only with the help of her husband and a part-time cleaning woman; that she could drive, but only for short distances and only a few times per week; and that she visited friends, but only once a week. She further testified that she required several naps each day and on many days did not get out of bed or get dressed. The Administrative Law Judge also stressed plaintiff was able to pursue painting as a hobby. But plaintiff testified that she no longer did so because paint fumes aggravated her symptoms.

Administrative Law Judge Cofresi found that plaintiff's failure to show distress or pain during the hearing further undermined her assertions that she is disabled. Such observations are of limited weight. *Weiner v. Apfel*, 1998 U.S.Dist. LEXIS at *53.

Even as characterized by the Administrative Law Judge, plaintiff's lifestyle does not preclude a finding of disability. As the Second Circuit has stated,

> when a disabled person gamely chooses to endure [her ailment] in order to pursue important goals, such as attending church and helping [her spouse] on occasion to go shopping for the family, it would be a shame to hold this endurance against her in determining benefits unless [her] conduct truly showed that [s]he is capable of working.

*Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998) (citations and internal quotations omitted). In short, "a claimant 'need not be an invalid to be disabled' under the Social Security Act." *Id.* (citations omitted). *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.1998) ("disability claimants should not be penalized for attempting to

lead normal lives in the face of their limitations.")

## III.

It has been eight years since plaintiff first applied for benefits and four years since plaintiff's insured status expired. Because of this delay, plaintiff's attorney asks the court to reverse the Commissioner's decision and to remand solely for the computation of benefits.

 Delay alone in the absence of substantial evidence supporting a disability determination does not justify a remand solely for the calculation of benefits. *See Bush v. Shalala,* 94 F.3d 40, 46 (2d Cir. 1996). Such a remand is appropriate only when the record provides such persuasive proof of disability that further proceedings "would serve no purpose." *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.1980).

That is not the case here. That the Commissioner failed to adhere to its own Chronic Fatigue Syndrome policy and the treating physician rule does not necessarily mean that proper application of these standards would lead to a different result. In addition, because Administrative Law Judge Cofresi found plaintiff able to perform her past relevant work, he made no determination regarding her ability to perform other work in the national economy. To remand solely to calculate benefits would thus be premature.

Plaintiff's request is denied. The Court nevertheless urges the Commissioner to expedite the proceedings upon remand.

## IV.

The Commissioner's motion for judgment on the pleadings is denied. Plaintiff's cross-motion for judgment on the pleadings is granted. Upon remand, the Commissioner is directed to reweigh the evidence concerning plaintiff's Chronic Fatigue Syndrome condition, including treating physicians' opinions and the Commissioner's 1999 ruling on Chronic Fatigue Syndrome.

So ordered.